UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ROLAND O. WARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00295-WTL-DLP |
| | ) | |
| RICHARD BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Roland O. Ward is serving a 58-year sentence for his 2011 Monroe County, Indiana convictions for child molesting, sexual misconduct with a minor, escape, child seduction, dissemination of matter harmful to minors, and neglect of a dependent. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Mr. Ward's petition for a writ of habeas corpus is **denied** and the action **dismissed with prejudice**. In addition, the Court finds that a certificate of appealability should not issue.

## I.      Factual and Procedural Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). On direct and post-conviction appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history:

> K.M.J. was born in 1993, and her parents divorced when she was three years old. Beginning at age seven, she lived with her mother ("Mother") and Ward, her stepfather, in Monroe County, Indiana. Generally, she visited her biological father ("Father") several evenings each week. Over a period of at least six years, Ward sexually molested K.M.J. at her home.
>
> Ward provided gifts to K.M.J., and he imposed many rules upon K.M.J.'s ability to socialize with friends and participate in after school activities and often

precluded her from going out with friends and staying at friends' homes. Ward restricted K.M.J.'s use of her cell phone, which Father had bought for her, and sometimes Ward would review K.M.J.'s text messages and record them on videotape. He deleted contacts or texts that he did not know or like. Ward would tell K.M.J. that he was jealous when she talked or texted with boys.

In 2003 to 2004, K.M.J. was in fourth grade, and one night after Mother had gone to bed, K.M.J. joined Ward in the living room, where he was watching television. K.M.J. sat on his lap and saw that he was watching pornography. Ward asked her, "Wouldn't that be so cool if you could do that?" *Tr.* at 405. She replied that, no, it would not. Ward lifted her shirt and rubbed and licked her breasts. On another occasion, Ward told his son to let the dog out, and then he turned on pornography and again lifted K.M.J.'s shirt, "sucked" her breasts, and licked her vagina. *Id*. at 406.

In 2004 to 2005, K.M.J. was in the fifth grade, and Ward continued to molest her "anytime he could get [her] alone." *Id.* at 408, 411. Ward would "suck [her] boobs" and "finger" her and require her to perform oral sex. *Id.* at 407, 411, 414. His acts of molestation would occur in the living room, K.M.J.'s bedroom, the basement, which could only be accessed through an outside door, and Ward's bedroom. Ward told K.M.J. that if she told anyone, she would go into foster care, he would go to jail, and Mother would hate her. The molestation happened so often that K.M.J. assumed something would happen every time they were alone.

It continued throughout middle school and into eighth and ninth grades, when she was fourteen through sixteen years old. The basement became the "frequent" location for sex. *Id.* at 422. In the basement, there was a pool table with a board on top of it. Often Ward would put a small television with a built-in DVD and VHS player on the pool table and play pornographic movies, which K.M.J. identified by title, including one entitled "Slutty Schoolgirls." *Id*. at 450, 454, 594. Ward stored the movies in a drawer of a gun cabinet in the basement. K.M.J. described that Ward would put his finger in K.M.J.'s vagina, and sometimes he would use "a dildo thing." *Id*. at 426. One was pink, one was purple, and one was clear but looked like a cactus.

Ward on occasion would take K.M.J. and her female friends and buy alcohol for them, including vodka, tequila, and wine. The teens would drink, and Ward would play strip poker with them. K.M.J.'s friend, E.E., saw Ward do inappropriate things to K.M.J., such as "smack" K.M.J. on the "butt" and "boobs," which E.E. thought was "strange." *Id*. at 513.

Ward had intercourse with K.M.J. when she was fourteen. The two had been drinking, and he told her that he was "horny." *Id*. at 437. Ward put a mint green blanket with snowmen on it on top of the pool table, and Ward attempted to insert his penis into K.M.J.'s vagina. K.M.J. cried, and he stopped. Although he did not attempt intercourse again for a period of time, he continued with other acts of sexual

molestation, and the intercourse eventually resumed. When K.M.J. would tell Ward that she did not want to submit to the sex acts, Ward would get angry or cry, saying things like, "why don't you love me?" in an attempt to "make [her] feel bad." *Id.* at 442. When K.M.J. was fifteen and sixteen years old, the sexual activity "would happen every day," usually when Mother was at work or asleep. *Id.* at 443. The molestation included anal sex on occasion. Ward wanted to videotape them having intercourse, telling K.M.J. that she could see "how much better [she] had gotten." *Id.* at 458-59. K.M.J. told Ward she did not want him to videotape them.

Ward also molested a friend of K.M.J.'s named K.H, who, like K.M.J., was born in 1993. The two girls became friends in seventh grade, and K.H. started spending the night in eighth grade. It was "common" for the two girls and Ward to drink alcohol that Ward provided. *Id.* at 739. K.H. saw Ward grab K.M.J.'s breasts and comment about them. One night when K.H. spent the night, and the girls were discussing the subject of tattoos, Ward suggested that they watch pornographic movies to see more tattoos. Ward videotaped K.M.J. and K.H. sitting on the pool table, drinking vodka, watching a pornographic movie. Ward appeared in the videotape, asking K.M.J. to hold a cigarette for him. *State's Ex.* 17; *Tr.* at 461-62.

On another night, while then-fifteen-year-old K.H. was spending the night with K.M.J., the two were drinking and playing strip poker with Ward. K.H. took off her clothes except her underwear, and Ward commented on her breasts. Later that night, after K.M.J. was asleep, Ward told K.H. to meet him in the basement, which she did, and he was standing naked. He told her to get on the pool table, and he had intercourse with K.H. On January 16, 2010, when K.M.J. was sixteen years old, she was sitting with Mother and Father, discussing moving in with Father full-time. Her parents agreed to this arrangement, and thereafter, K.M.J. disclosed to them that Ward was "having sex" with her. *Tr.* at 466-67, 522-53. K.M.J. told her parents that she could not take it anymore. Father called the Monroe County Sheriff's Department. Detective Shawn Karr ("Detective Karr") of the Monroe County Sheriff's Department and Child Protective Services Investigator Jordan Roberts ("Roberts") met with Mother, Father, and K.M.J. at the detective's office. Detective Karr obtained a buccal swab DNA sample from K.M.J. Thereafter, Detective Karr obtained a search warrant of the residence where the molestations occurred, which was owned by Mother.

That same evening, at approximately 8:00 p.m., Detective Karr, accompanied by Sergeant Braid Swain ("Sergeant Swain"), Roberts, and an evidence technician, executed the search warrant. Ward was home alone at the time. Police instructed Ward that he was to remain seated with them as police officers searched the premises. They also told Ward that he was required to stay with them because officers were going to obtain a DNA sample from him by swabbing the inside of his cheek, as provided in the search warrant. Ward asked and received permission to call his wife, get a drink, go to the bathroom, and let the pet dog inside. As he opened the door to let the dog in the house, Ward fled. Police did not locate him, but Ward turned himself into police custody the following day.

During the search, police collected from the residence, among other things: a Sony digital camera, a video recorder, a Handycam, another camcorder, a Sony VCR, three video cassette tapes, a purple vibrator, a clear vibrator, and a green snowman blanket, and pornographic DVDs including "Slutty Schoolgirls." Two of the video cameras had the recording indicator light covered up with tape.

The State charged Ward with: Count I, Class A felony child molesting for performing or submitting to deviate sexual conduct with K.M.J., a child under fourteen years of age; Count II, Class B felony sexual misconduct with a minor for performing or submitting to deviate sexual conduct by penetrating the sex organ of K.M.J. with his finger; Count III, Class B felony sexual misconduct with a minor for performing or submitting to deviate sexual conduct by penetrating the anus of K.M.J. with his sex organ; Count IV, Class B felony sexual misconduct with a minor for performing or submitting to deviate sexual conduct by penetrating the sex organ of K.M.J. with an object; Count V, Class B felony sexual misconduct with a minor for performing or submitting to sexual intercourse with K.M.J., a child at least fourteen but less than sixteen years of age; Count VI, Class B felony sexual misconduct with a minor for performing or submitting to sexual intercourse with K.H., a child at least fourteen but less than sixteen years of age; Count VII, Class C felony escape; Count VIII, Class D felony child seduction by engaging in sexual intercourse with K.M.J., who was at least sixteen but less than eighteen years of age with the intent to arouse or satisfy the sexual desires of Ward or K.M.J.; Count IX, Class D felony dissemination of matter harmful to minors by knowingly disseminating such material to K.M.J.; and Count X, Class D felony neglect of a dependent, by knowingly placing K.M.J., his dependent, in a situation that endangered her life or health. Ward filed a motion to dismiss the escape charge, arguing that he was not being lawfully detained when he fled, and the trial court denied the motion.

At the jury trial, the State presented the testimony of various witnesses, including K.M.J, her friends E.E. and K.H., Mother, K.M.J.'s stepmother, and various law enforcement officers. Ward presented the testimony of his twenty-year-old son. Ward's defense theory was he did not commit the acts that he was accused of committing and that K.M.J. had fabricated the allegations as a means of retaliating for Ward's strict rules.

After the State rested, Ward sought judgment of acquittal on the escape charge, which the trial court denied. After the presentation of the evidence, the parties and the trial court reviewed the trial court's proposed final jury instructions. Ward posed no objection to any of them.

On October 6, 2011, the jury found Ward guilty as charged. At the January 2012 sentencing hearing, the trial court imposed an aggregate fifty-eight-year sentence. Ward timely initiated a direct appeal, but with permission, he suspended the appeal to return to the trial court to pursue post-conviction relief. Among other

things, his petition asserted that he received ineffective assistance of trial counsel because counsel: (1) failed to move to dismiss the charging information for Count I because it did not allege any *mens rea*; (2) failed to move to dismiss the charging information for Counts II, III, IV, V, and VI because they did not properly allege a "knowingly" element; (3) failed to object to the trial court's preliminary and final instructions on Counts I and VIII because they failed to advise the jury that the defendant must "knowingly" have engaged in the charged conduct and advised the jury that "it is implied" that the defendant acted knowingly in his conduct; (4) failed to object to the trial court's preliminary and final jury instructions with respect to the Class B felonies charged in Counts II, III, IV, V, and VI because the instructions advised the jury that "it is implied" that the defendant acted knowingly; (5) failed to move to sever Count VI, which alleged misconduct with K.H. and was unfairly prejudicial to a fair consideration of the other charges relating only to K.M.J.; and (6) failed to object "to the misjoinder" of Count VII, the escape charge. *Appellant's App.* at 166–67.

At the post-conviction hearing, Ward called his trial attorney, Jennifer Culotta ("Culotta"), to testify, along with two expert witnesses regarding whether Culotta was deficient in her representation of Ward. In July 2014, the postconviction court issued extensive findings of fact and conclusions of law, denying Ward's petition.

*Ward v. State*, 30 N.E.3d 788, 2015 WL 1124607, *1-4 (Ind. Ct. App. 2015).

Mr. Ward utilized the *Davis-Hatton* procedure[1] in the trial court and appealed under a post-conviction cause number. As issues that would have been raised on direct appeal, Ward claimed: (1) that the trial court's jury instructions had "deprived Ward of federal and state constitutional rights to have every element of a crime determined beyond a reasonable doubt by his jury," which constituted "fundamental error"; and (2) that the evidence supporting his escape conviction was insufficient. As an issue arising from the denial of post-conviction relief, Mr. Ward claimed that

---

[1] Pursuant to *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977) and *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993), the *Davis-Hatton* procedure involves a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a post-conviction relief petition to be pursued in the trial court. *Talley v. State*, 51 N.E.3d 300, 302 (Ind. Ct. App. 2016), *trans. denied*; *see also* Ind. Appellate Rule 37(A) ("At any time after the Court on Appeal obtains jurisdiction, any party may file a motion requesting that the appeal be dismissed without prejudice or temporarily stayed and the case remanded to the trial court . . . for further proceedings. The motion must be verified and demonstrate that remand will promote judicial economy or is otherwise necessary for the administration of justice."). The procedure is useful where a defendant needs to develop an evidentiary record to support a claim of ineffective assistance of trial counsel. *Talley*, 51 N.E.3d at 303.

his trial counsel had rendered ineffective assistance based on: (1) a failure to move to dismiss seven of the ten counts in the charging information for failure to allege knowing conduct; (2) a failure to object to multiple jury instructions; (3) a failure to move to sever Count VI, which alleged intercourse with K.H.; and (4) a failure to seek severance of Count VII, the escape charge.  On March 11, 2015, the Indiana Court of Appeals affirmed Mr. Ward's conviction and sentence.  As to his claim of ineffective assistance, the Indiana Court of Appeals found that Mr. Ward failed to establish prejudice from his counsel's alleged ineffective assistance.  *See Ward v. State*, 2015 WL 1124607, *6-12 (Ind. Ct. App. 2015).  As to the jury instructions, the Indiana Court of Appeals held that Mr. Ward failed to preserve the issue because he failed to object at trial to the final instructions.  *Id.* at *12.  The court held that Mr. Ward failed to establish fundamental error as an exception to waiver of unpreserved issue because Mr. Ward's failure to prove ineffective assistance precluded a claim of fundamental error. *Id.* at *12-13.  Finally, the Indiana Court of Appeals held that there was sufficient evidence that Mr. Ward committed escape.  *Id.* at *13-14.

Mr. Ward sought further review by the Indiana Supreme Court.  The Indiana Supreme Court denied transfer on July 23, 2015.

On July 20, 2016, Mr. Ward filed this petition for a writ of habeas corpus.

## II.      Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2254(a). Mr. Ward's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

The Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and has emphasized that courts

must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Where a claim has been adjudicated on the merits in state court, habeas relief is available under the deferential AEDPA standard only if the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### III. Discussion

Mr. Ward raises two grounds in his petition: (1) the jury instructions stating that "[i]t is implied that the defendant acted knowingly in his conduct" violated his Fifth, Sixth, and Fourteenth Amendment rights and was a structural due process error not susceptible to Indiana's fundamental error review; and (2) ineffective assistance of trial counsel.

Respondent argues that Mr. Ward's petition is untimely on the theory that the AEDPA one-year limitation began to run when Mr. Ward's first direct appeal was dismissed at his request on May 24, 2012. Respondent otherwise argues that ground one relating to jury instructions is procedurally defaulted because it was rejected on adequate and independent state-law grounds. Respondent further argues that the Indiana Court of Appeals reasonably applied *Strickland* to conclude that Mr. Ward did not receive ineffective assistance of trial counsel.

In reply, Mr. Ward asserts his petition is timely because the one-year limitation period reset upon his second direct appeal. Mr. Ward further asserts that ground one was not rejected on adequate and independent state-law grounds because the Court of Appeals relied on *Benefield v. State*, 945 N.E.2d 791 (Ind. Ct. App. 2011), which relies on *Strickland v. Washington*, 466 U.S. 668 (1984), and is therefore predicated on federal law grounds. Mr. Ward further asserts the Court of Appeals applied a standard for ineffective assistance of counsel that was contrary to the Supreme Court's precedent in *Strickland*.

#### A. Timeliness of Mr. Ward's Petition

Respondent argues that Mr. Ward's conviction became final when Mr. Ward dismissed his initial direct appeal to pursue post-conviction relief. Mr. Ward asserts otherwise.

In an attempt to "curb delays, to prevent 'retrials' on federal habeas, and to give effect to state convictions to the extent possible under law," Congress, as part of AEDPA, revised several

statutes governing federal habeas relief.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000).  Along with triggering dates not applicable here, "[u]nder 28 U.S.C. § 2244(d)(1)(A), a state prisoner seeking federal habeas relief has just one year after his conviction becomes final in state court to file his federal petition."  *Gladney v. Pollard*, 799 F.3d 889, 894 (7th Cir. 2015).

The Supreme Court held that "§2244(d)(1)(A), which marks finality as of 'the conclusion of direct review or the expiration of the time for seeking such review,' consists of two prongs." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  Each prong relates to distinct categories of petitioners.  The "conclusion of direct review" prong refers to petitioners who appeal to the Supreme Court, whose judgment becomes final when the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari."  For other petitioners, judgment is final at the "expiration of the time for seeking such review" – when their time to seek review with the Supreme Court, or the state court, expires.  *Id.*

"[A] a state court's reopening of direct review will reset the limitations period." *Id.* at 152 (citing *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) ("where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A).")); *see also Hertel v. Superintendent*, No. 3:12-CV-742 JD, 2013 U.S. Dist. LEXIS 67602, at *15 (N.D. Ind. May 13, 2013) (noting that petitioner's "one-year limitation has not started running" where he had previously filed and dismissed a direct appeal for remand to the trial court for the purpose of pursuing a *Davis/Hatton* procedure, and the post-conviction proceedings were still pending).

Mr. Ward's conviction and sentence became final when the time to seek certiorari at the United States Supreme Court expired.  28 U.S.C. § 2244(d)(1)(A).  Because the Indiana Supreme

Court denied transfer on July 23, 2015, the time to seek certiorari expired on October 21, 2015. *See* Rule 13 of *Rules of the Supreme Court of the United States*. Any petition for a writ of habeas corpus, therefore, was due one year later, on October 21, 2016. Mr. Ward's petition, filed on July 20, 2016, is therefore timely.

B.     **Ground One: Jury Instructions**

Mr. Ward asserts that the jury instructions instructing that "[i]t is implied that the defendant acted knowingly in his conduct" violated his Fifth, Sixth, and Fourteenth Amendment rights and was a structural due process error that should have been reviewed under the federal plain error analysis of *United States v. Olano*, 507 U.S. 725, 732 (1993) and not Indiana's fundamental error review. Respondent argues that his claim is procedurally defaulted because it was rejected on adequate and independent state-law grounds. In reply, Mr. Ward asserts that ground one was not rejected on adequate and independent state-law grounds because the Court of Appeals relied on *Benefield v. State*, 945 N.E.2d 791 (Ind. Ct. App. 2011), which relies on *Strickland v. Washington*, 466 U.S. 668 (1984), and is therefore predicated on federal law grounds.

1.     *Whether the Court of Appeals Rejected the Claim on Adequate and Independent State-Law Grounds*

"A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal quotation marks and citations omitted). This doctrine is premised on the rule that federal courts have "no power to review a state law determination that is sufficient to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The state-law ground precluding review by a federal habeas court "may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker*, 562 U.S. at 315. Therefore, "[e]rrors of state law in and of themselves are

not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (internal quotation marks and citations omitted). "[O]nly if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.*

On the issue of the jury instructions, the Indiana Court of Appeals held:

Ward contends that the trial court erred when it instructed the jury with Final Instruction 3. Ward raised no objection to Final Instruction 3 at trial. Acknowledging this failure to preserve the issue below, Ward brings a direct appeal issue claiming that the trial court committed fundamental error when instructing the jury.

A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

*Oster v. State*, 992 N.E.2d 871, 878 (Ind. Ct. App. 2013), *trans. denied* (internal citations omitted).

As a preliminary matter, we note that this court has taken the opportunity to address and compare the fundamental error and ineffective assistance standards. *See Benefield.* 945 N.E.2d at 801–05. We observed that both standards make reference to a defendant's right to a fair trial, and thus, at first reading, "[I]t is not immediately obvious whether those standards differ substantively or merely state differently the same question." *Id.* at 802. Indeed, the two standards may frequently lead to the same result. *Id.* at 803. However, the *Benefield* court recognized that there is, in fact, a "subtle difference" and that "fundamental error and prejudice for ineffective assistance of trial counsel present two substantively different questions." *Id.* at 805. The court further clarified that "because the standard for ineffective assistance prejudice is based on a reasonable probability of a different result, and fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible, we think the standard required to establish fundamental error presents a higher bar." *Id.* at 804. Accordingly, "[W]here an appellant has failed to prove ineffective assistance of trial counsel, our holding would exclude a finding of fundamental error." *Id.* at 805.

Applying that premise here, where we have found that Ward was not prejudiced by counsel's failure to object to the jury instructions, and he therefore did not received [sic] ineffective assistance of trial counsel, Ward's claim of fundamental error fails. *See Walker v. State*, 813 N.E.2d 339 341–42 (Ind. Ct. App. 2004) ("[O]ur conclusion that Walker received effective assistance of counsel necessarily precludes Walker's right to relief under the theory of fundamental error."), *trans. denied*. Accordingly, we reject Ward's direct appeal claim that the trial court committed fundamental error in instructing the jury.

*Ward*, 2015 WL 1124607 at *12-13.

Although the Court of Appeals rejected Mr. Ward's claim about the jury instructions based on Indiana's fundamental error analysis, it did so by comparison to its *Strickland* analysis of prejudice from Mr. Ward's claim of ineffective assistance of counsel. There is a dispute about whether the state court decision rested on an independent investigation of state law. In such circumstances, the Supreme Court has held that:

in order to minimize the costs associated with resolving ambiguities in state court decisions while still fulfilling our obligation to determine if there was an independent and adequate state ground for the decision, we established a conclusive presumption of jurisdiction in these cases:

"When, as in this case, a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so."

After *Long*, a state court that wishes to look to federal law for guidance or as an alternative holding while still relying on an independent and adequate state ground can avoid the presumption by stating "clearly and expressly that [its decision] is … based on bona fide separate, adequate, and independent grounds."

*Coleman*, 501 U.S. at 733 (1991) (internal citations omitted). Accordingly, the Court will presume that the Court of Appeals' decision on jury instructions rested in part on federal law, and thus habeas review of the claim is not precluded.

2.      *Whether the Court of Appeals Erred in Applying Indiana Fundamental Error
         Analysis*

Following the enactment of AEDPA, "the critical question on the merits of most habeas

corpus petitions shifted …to a much narrower question: whether the decision of the state court

keeping the petitioner in custody was 'contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States; or

resulted in a decision that was based on an unreasonable determination of the facts . . . .'" *Avila v.*

*Richardson*, 751 F.3d 534, 535 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)).

> A decision is contrary to clearly established federal law if the state court applies a
> rule that conflicts with a rule identified by the Supreme Court, or if the state court
> reaches a different conclusion than the Supreme Court in a case with materially
> indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A
> decision involves an unreasonable application of clearly established law if the state
> court "identifies the correct governing legal principle . . . but unreasonably applies
> that principle to the facts of the prisoner's case." *Id.* at 413. Under both tests, mere
> error is not sufficient; a state court's decision must be "objectively unreasonable."
> *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).

*Simonson v. Hepp*, 549 F.3d 1101, 1105-06 (7th Cir. 2008). If either test is met as to a given claim,

the federal habeas court reviews that claim "under the pre-AEDPA standard of 28 U.S.C. § 2243

and dispose[s] of the matter 'as law and justice require,' which is essentially *de novo* review."

*Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015).

Mr. Ward contends that, pursuant to *Chapman v. California*, 386 U.S. 18, 20-21 (1967),

which holds: "[The U.S. Supreme Court] cannot leave to the States the formulation of the

authoritative laws, rules, and remedies designed to protect people from infractions by the States of

federally guaranteed rights ... it is [the U.S. Supreme Court's] responsibility to protect by

fashioning the necessary rule," the Court of Appeals' decision was contrary to clearly established

federal law because the Court of Appeals applied Indiana's fundamental error analysis instead of

federal plain error analysis under Rule 52 of the *Federal Rules of Criminal Procedures*.

In *Chapman*, the Supreme Court held that federal law governs where there has been a federal constitutional error. 386 U.S. at 20-21. *Chapman* crafted a new federal standard of "harmless error" to be applied to federal constitutional errors, such as a defendant's Fifth Amendment right against self-incrimination, in a state court proceeding: "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 22-24. Subsequent to *Chapman*, Congress passed AEDPA, which provides that a writ of habeas corpus may not be granted unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). The Supreme Court later incorporated the "unreasonable application" language into the *Chapman* standard and held that habeas relief may not be granted "if the state court simply erred in concluding that the State's errors were harmless ... rather, habeas relief is appropriate only if the [state appellate court] applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003).

While *Chapman's* harmless error analysis would be applicable to federal constitutional errors in a state court proceeding, Mr. Ward does not assert that the Court of Appeals' decision was contrary to *Chapman* and it is Mr. Ward's burden to do so, to the extent that is what he wishes to argue. *See Harding*, 380 F.3d at 1043. Thus, the Court need not conduct any analysis under *Chapman*.

Instead, Mr. Ward goes down a completely different path to argue that the Indiana Court of Appeals should have applied plain error analysis under Fed. R. Crim. P. 52(b). But the *Federal Rules of Criminal Procedures* only apply to ***federal*** criminal proceedings (except where it explicitly states otherwise). *See* Fed. R. Crim. P. 1(a)(1)-(2); *see, e.g.* Fed. R. Crim. P. 3 (authorizing state judges to administer oaths for the issuance of a criminal complaint). Mr. Ward

does not cite to any clearly established federal law that asserts that a ***state*** court should apply Fed. R. Crim. P. 52(b) in reviewing errors, nor has the Court found any such proposition.

Thus, Mr. Ward has not shown that the Indiana Court of Appeals' decision on Mr. Ward's jury instructions was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Their decision, moreover, was not based on an "unreasonable determination of the facts," nor does Mr. Ward raise this argument. Mr. Ward's arguments regarding the Court of Appeals' alleged unreasonable application of *Strickland* are discussed below.

Accordingly, Mr. Ward is not entitled to habeas relief on the ground of his jury instructions.

C.    **Ground Two: Ineffective Assistance of Counsel**

Mr. Ward argues that his trial counsel was ineffective for failing to (1) object to jury instructions; and (2) move to sever the escape charge. He asserts that the Indiana Court of Appeals' analysis was contrary to *Strickland* and that the Indiana Court of Appeals erroneously failed to analyze the prejudice from trial counsel's performance from a cumulative error perspective. Respondent argues that the Indiana Court of Appeals reasonably applied *Strickland* to conclude that Mr. Ward did not receive ineffective assistance of trial counsel.

*1.    Ineffective Assistance of Counsel Standard*

*Strickland v. Washington*, 466 U.S. 668, 684 (1984), supplies the clearly established federal law, as determined by the Supreme Court of the United States, that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, *supra*, at 688, 694).

*Hinton v. Alabama*, 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Whether AEDPA deference applies to each prong depends on whether the state court addressed each prong. If it decides the issue only on one prong, the other is reviewed *de novo*. *See Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012) ("Because [the state court] did not reach Strickland's ineffectiveness prong, [this Court] . . . review[s] the issue *de novo*."); se*e Porter v. McCollum*, 558 U.S. 30, 38 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

"It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free, or the best possible approach, or even an average one, but whether the defendant had the 'counsel' of which the sixth amendment speaks." *Williams v. Lemmon*, 557 F.3d 534, 538 (7th Cir. 2009). Nevertheless, a "single error may suffice if that error is sufficiently egregious and prejudicial." *Id.* (internal citations and quotation marks omitted).

In deciding the issue of ineffective assistance of counsel, the Indiana Court of Appeals recited the *Strickland* standard. *Ward*, 2015 WL 1124607 at *5. The Court of Appeals explained that the Court "assess[es] counsel's performance based on facts that are known at the time and not through hindsight." *Id.* at *6 (internal citations omitted). "Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate

counsel's performance as a whole." *Id.* "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Id.*

2.    *Jury Instructions – Indiana Court of Appeals' Application of* <u>Strickland</u>

As to Mr. Ward's claim that his counsel was ineffective for failing to object to the jury instructions, Mr. Ward and Respondent both agree that the Indiana Court of Appeals did not offer any rationale based on the performance prong of *Strickland.* With respect to the prejudice prong of *Strickland*, the Indiana Court of Appeals held:

> …Here, Ward's defense was that the charged conduct did not occur. He did not assert the conduct was a mistake, accident, or that he did not otherwise know what he did. In line with this defense, Culotta testified that she did not consider *mens rea* or knowledge to be at issue, or in any way contested, at trial. Given Ward's defense, the jury was not asked to decide if Ward knew what he was doing when he engaged in the conduct; the jury was asked to determine if he committed the charged acts at all. There was considerable evidence mounted against Ward. It was his word against the victims' word, and the jury did not believe Ward. The post-conviction court considered the evidence presented at trial and determined that Ward failed to establish prejudice as a result of any error associated with his counsel's failure to object to Final Instruction 3. In this case, the post-conviction judge was also the trial judge. We have held, that where the same judge conducted both the trial and the post-conviction proceedings, "[The post-conviction court's findings and judgment should be entitled to greater than usual deference" because the court is "uniquely situated to assess whether [the defendant's] counsel's performance fell below an objective standard of reasonableness ... and whether, but for counsel's unprofessional conduct, there was a reasonable probability that the jury would have reached a different verdict." *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied*.
>
> Here, the post-conviction court determined that Ward failed to carry his burden to show that, but for counsel's failure to object to Final Instruction 3, there is a reasonable probability that he would have been found not guilty. Our review of the record does not lead us to an opposite conclusion than that reached by the post-conviction court. *See Hubbard v. State*, 696 N.E.2d 72, 75 (Ind. Ct. App. 1998) (where defendant claimed he did not shoot gun that killed victim, and he was not contesting element of intent, defense counsel's failure to object to instruction, which did not state the *mens rea* for murder in the same terms as charged by the information, was not ineffective assistance).

*Ward*, 2015 WL 1124607 at *8.

This assessment is compatible with the prejudice prong of the federal *Strickland* standard. And because of this reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011).

     *3.     Escape Charge*

     A.     <u>Standard to Apply</u>

Mr. Ward asserts that because his trial counsel failed to move to sever the escape charge, Mr. Ward was subjected to "flight is a sign of guilt" prejudice. As to this claim, Mr. Ward and Respondent both agree that the Indiana Court of Appeals did not offer any rationale based on the performance prong of *Strickland*. With respect to the prejudice prong of *Strickland*, the Indiana Court of Appeals held:

> …Ultimately, the post-conviction court declined to address whether Culotta's performance was deficient, and fell below the objective standard of reasonableness, because Ward was not prejudiced. It stated, "Even if the escape charge were severed and [the State was] precluded from arguing [consciousness] of guilt in its closing, the Court finds that the jury would not have reached a different decision." *Id*. at 159.

> We agree. K.M.J. detailed the course and pattern of the molestations, which generally included pornographic movies and sometimes alcohol, both of which Ward provided, if not required. The movies were found in a drawer of a gun cabinet, as K.M.J. described. The movies, which K.M.J. identified by title, were admitted at trial and were consistent with her description. The dildos likewise were admitted and consistent with her description of them. K.H. and E.E. testified to Ward providing the girls with alcohol, and they witnessed Ward touch K.M.J. inappropriately. K.M.J. identified the green snowman blanket often used during the course of the molestations, and K.H. identified a certain sleeping bag that Ward put on the pool table before engaging in intercourse with her; both items were retrieved by police. Ward's defense was that the events did not occur and that K.M.J. and K.H. fabricated them, in order to avoid or be alleviated from his strict parenting rules; however, regularly providing alcohol to minors and playing strip poker, as claimed by K.M.J. and K.H., and which the jury evidently believed, is not consistent with strict parenting. Considering the evidence presented at trial, Ward has failed to show by a preponderance of the evidence that Culotta's failure to seek severance of the escape charge changed the results of the proceedings. Accordingly, Ward failed to establish that he was prejudiced by any failure to seek severance of the escape charge, and the post-conviction court properly denied Ward's claim that he received ineffective assistance of counsel on this basis.

*Ward*, 2015 WL 1124607 at *11-12.

The Indiana Court of Appeals' use of a "preponderance of the evidence" standard for determining prejudice was contrary to clearly established Supreme Court case law. The Supreme Court has explained that, under *Strickland,* the standard for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Thus, because the Indiana Court of Appeals did not offer a rationale on the performance prong of *Strickland*, and its holding on the prejudice prong was contrary to *Strickland*, the Court reviews *de novo* Mr. Ward's claim of ineffective assistance of counsel for failing to sever the escape charge. *See Caffey*, 802 F.3d at 894; *Woolley*, 702 F.3d at 422.

B.    Mr. Ward's Arguments

Mr. Ward argues that his trial counsel, Ms. Culotta, was ineffective for failing to sever the escape charge. He argues that there is ample evidence that Ms. Culotta's performance fell below an objective standard of reasonableness: (1) Ms. Culotta admitted in her post-conviction testimony that she wanted the escape charge separated from the sex crime charges, but failed to take action until the morning of trial to file a motion to dismiss the escape charge as an attempt to exclude it; (2) Ms. Culotta's motion to dismiss was not only untimely but also improper; and (3) Ms. Culotta should have not waited until the last moment and should have correctly filed a motion to sever through a motion *in limine* or a motion claiming misjoinder. Mr. Ward further argues that, but for trial counsel's ineffectiveness, and without the "flight is a guilty conscious" prejudice, he might not have been convicted on the more serious sex crime charges. He also asserts there is a reasonable probability the outcome of the escape charge, if not the sex crimes too, would have been different if the escape charge had been severed.

C.     Right to Severance

As an initial matter, Mr. Ward has failed to show that the Court would have granted a motion to sever. Two or more offenses may be joined in the same information when the offenses: (1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Ind. Code § 35-34-1-9(a). However, if two or more offenses have been joined for trial in the same information solely because they are of the same or similar character, the defendant shall have a right to sever the offenses. Ind. Code § 35-34-1-11(a). Where it is not a matter of right, the court, upon motion by the defendant or the prosecutor, has the discretion to sever if it is:

> appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense."

*Id.*

Because the escape charge was not joined solely because of "same or similar character" but because it was "based … on a series of acts connected together or constituting parts of a single scheme or plan," severance was not a matter of right. The trial court had the discretion to sever. Indeed, Ms. Culotta testified in her deposition for the post-conviction hearing that she considered but did not file a motion to sever the escape charge because she did not believe the judge would grant her motion to sever. *Ward v. State*, Cause No. 53A01-1308-PC-330 (hereinafter "PCR"), Hearing on August 21, 2013, Ex. 7 at 14.

D.     Effects of Failure to Sever on Molestation Charges

Moreover, Mr. Ward's argument that inclusion of the escape charge improperly subjected him to a "flight is guilty conscious" prejudice is unavailing. In Indiana, "flight and related conduct

may be considered by a jury in determining a defendant's guilt." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001) (citing *Johnson v. State*, 284 N.E.2d 517, 519 (Ind. 1972). "[E]vidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument." *Id.* (internal citations omitted). Thus, even if Ms. Culotta had properly submitted and won a motion to sever the escape charge, evidence of Mr. Ward's flight could still have been brought in as evidence and argued in the prosecutor's closing argument. Although Mr. Ward has argued that Ms. Culotta should have filed a possible motion *in limine* or an objection to prevent the prosecutor from arguing conscience of guilt, the post-conviction court noted that "[f]or the same reasoning [as in *Dill*], even if Ms. Culotta had filed a motion in limine this Court finds that it would not have been required to grant the motion or sustain the objection, which would be required to find ineffective assistance of counsel." PCR, *Appellant's Appendix* at 159 n. 6.

Even had the escape charge been severed and excluded and a motion *in limine* filed and granted to exclude arguments regarding "flight is guilty conscious," as detailed in the Indiana Court of Appeals' opinion, there was substantial evidence against Mr. Ward on the sex crime charges (*Ward*, 2015 WL 1124607 at *12). Thus, Mr. Ward has failed to show that, but for Ms. Culotta's performance, there was a reasonable probability that the jury would have reached a different decision as to the sex crime charges.

E.     Effect on Escape Charge

With regard to whether severance would have changed the result of the escape charge, Mr. Ward has likewise failed to show that the jury would have decided differently if the escape charge had been severed. At the end of the prosecutor's case, Ms. Culotta moved for judgment of acquittal as to the escape charge, arguing that because Mr. Ward paused briefly while running and looked over his shoulder before continuing to run off, the police officers allowed him to leave and he was

no longer detained.  *See State v. Ward*, Case No. 53C02-1001-FA-00059 (hereinafter "Crim."),

Trial Tr. 791:11-93:3.  The State disagreed, noting that Sergeant Swain and Detective Karr testified

that they yelled stop to Mr. Ward a number of times and never gave him permission to leave.  The

trial court agreed that judgment at acquittal was not proper, finding "there was sufficient testimony

from the officer about the defendant – asking him to sit down a number of times, keeping him

around in case something was discovered, sufficiently to submit the case – the charge to the jury."

*Id.* at 795:3-8.  The Indiana Court of Appeals also agreed (when deciding the issue of the

sufficiency of the evidence for the escape charge, an issue not raised in this petition):

> Ward was not given any temporary leave or liberty, he was supervised and
> accompanied at all times and was told that he needed to remain with Detective Karr
> until the search was completed and a buccal swab had been obtained from him.
> Under such circumstances, we are not persuaded that he reasonably believed that
> he was not compelled to stay on the premises, as he claims. We find that the State
> presented sufficient evidence from which the jury could conclude that Ward
> committed escape.

*Ward*, 2015 WL 1124607 at *14.

Indeed, during the trial, Detective Karr testified that Mr. Ward was told about fifteen times

that he was not free to go and needed to stay put with him.  Crim. Tr. at 582:13-22.  Detective Karr

further testified that Mr. Ward was a suspect, was actually listed in the search warrant because of

the need to get his DNA in the form of a buccal swab, so Mr. Ward needed to remain on the

premises.  *Id.* at 583:13-84:6.  At one point, Sergeant Swain brought to Mr. Ward and Detective

Karr a black bag that had a video camera with tape covering the on indication light.  *Id.* at 594:20-

95:8; 625:3-22.  Mr. Ward then went to the kitchen, went to the backdoor, and started running

across the backyard towards his barn.  *Id.* at 595:9-19; 625:3-22.  Detective Karr never told Mr.

Ward that he could go, and hadn't gotten the DNA swab.  *Id.* at 595:20-96:1.  Sergeant Swain also

never told Mr. Ward he could leave the house or be released from Detective Karr's detention.  *Id.*

at 626:6-11. When Mr. Ward started running, Sergeant Swain called out to him to stop. *Id.* at 626:12-24. Both Detective Karr and Sergeant Swain gave chase, but gave up because it was dark and muddy. *Id.* at 596:11-25; 620:22-21:7; 626:25-627:5. Thus, there was substantial evidence to support the jury's conviction of Mr. Ward on the escape charge.

Mr. Ward's sole argument is that "the jury likely paid little attention to the thin evidence the State offered in support of the minor escape charge after finding Ward guilty of nine, much more serious charges." Dkt. No. 2 at 23. However, "[it is] the almost invariable assumption of the law that jurors follow their instructions. We presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *United States v. Olano*, 507 U.S. 725, 740 (1993) (internal quotation marks and citations omitted). Without more, Mr. Ward has failed to show a reasonable probability that the result of the escape charge, and thus the proceeding, would have been different.

Because the Court has found that Mr. Ward has failed to show a reasonable probability that the result of the proceeding would have been different, the Court does not need to decide whether Ms. Culotta's performance fell below objective standards.

Accordingly, Mr. Ward is not entitled to habeas relief on this ground.

### 4. *Cumulative Effect of Prejudice*

Finally, Mr. Ward argues briefly that the Court of Appeals failed to analyze the prejudice against Mr. Ward from a cumulative perspective, *see Sussman v. Jenkins*, 636 F.3d 329, 360 (7th Cir. 2011) (the court must consider the cumulative impact of all of the trial counsel's errors), and not just in isolation, and that there is a reasonable probability that the verdict in Mr. Ward's trial would have been different if the jury was not subjected to the cumulative effect of trial counsel's

failure to object to the directed verdict on the element of "knowing" and for failing to sever the escape charge. Respondent does not address Mr. Ward's arguments.

The Indiana Court of Appeals addressed each alleged error by trial counsel in isolation. *See Ward*, 2015 WL 1124607 at *5-12. Additionally, the Indiana Court of Appeals failed to discuss the errors' cumulative effect. *See id.* The Indiana Court of Appeals' failure to do so was contrary to or an unreasonable application of *Strickland*. *See, e.g.*, *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012) ("The question is whether counsel's entire performance . . . prejudiced [the petitioner]. By analyzing each deficiency in isolation, the [state] appellate court clearly misapplied the *Strickland* prejudice prong," and therefore concluded that the state "appellate court's prejudice determination was unreasonable insofar as it failed to apply the correct framework."); *see also Sussman v. Jenkins*, 636 F.3d 329, 360-61 (7th Cir. 2011) ("Here . . . we are not faced with a single error by counsel and, therefore, must consider the cumulative impact of this error when combined with counsel's [other identified error]."); *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006) ("[The Court] must assess the totality of the omitted evidence under *Strickland* rather than the individual errors.") (internal quotation marks and citations omitted).

As detailed above, the evidence against Mr. Ward on both the sex crime charges and the escape charge was overwhelming. With respect to the sex crimes, Mr. Ward's defense at trial was that the sex crimes did not happen and K.M.J. and K.H. fabricated their testimony. *Ward*, 2015 WL 1124607, *8. His defense was not that the conduct was a mistake, that it was an accident, or that he did not know what he was doing. Thus, the error with respect to the jury instruction was minor. Indeed, given that the jury found Mr. Ward guilty of providing alcohol and pornography to coerce two underage individuals to submit to a variety of sex acts over the period of several

years, it is very difficult to comprehend how Mr. Ward could have done so accidentally and unknowingly. With respect to the escape charge, Mr. Ward's defense was that he was "not in detention" – not that he didn't run. Severance of the escape charge would not have reasonably changed the outcome given the strong evidence that Mr. Ward ran away when he was to remain in the custody of the police. Looking to the cumulative effect of the error from the jury instruction and Ms. Culotta's failure to sever the escape charge, Mr. Ward has not shown there is a reasonable probability that the verdicts would have been different. Thus, Mr. Ward is also not entitled to habeas relief on this ground.

## IV. Conclusion

This Court has carefully reviewed the state record in light of Mr. Ward's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits.

Having applied the appropriate standard of review, and having considered the pleadings and the record, Mr. Ward's petition for writ of habeas corpus must be **denied.**

Judgment consistent with this Entry shall now issue.

## V. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the Court finds that the petitioner has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED**.

Date: 3/26/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana


Distribution:

Eric Parker Babbs
INDIANA ATTORNEY GENERAL - MEDICAID FRAUD CONTROL UNIT
eric.babbs@atg.in.gov

David Elsworth Deal
VOYLES ZAHN & PAUL
deal@daviddeallaw.com